APPEAL OF ILLINOIS PAPER BOX CO.

Docket No. 770.   Decided September 30, 1926.

1. Additional compensation for the year 1921, authorized in 1922, is not a deductible item for 1921.

2. A motion made by the Commissioner to decrease invested capital for each year to the extent of the full tax paid for the prior year, instead of prorating such tax from the time it became due and payable, denied under authority of section 1207 of the Revenue Act of 1926.

*Samuel J. Moran, Esq.*, for the petitioner.
*B. H. Saunders, Esq.*, for the Commissioner.

This is an appeal from the determination of a deficiency in income and profits tax for the years 1919, 1920 and 1921, in the amount of $2,942.28. The deficiency arose from the action of the Commissioner (1) in refusing to allow certain depreciation claimed by the taxpayer for 1919 and 1920, (2) in increasing income by the amount of certain donations, and (3) in refusing to allow additional com-

pensation to officers for the year 1921. At the close of the hearing the Commissioner also moved that the invested capital of the taxpayer for each year be reduced by the entire amount paid subsequently as income and profits tax for the said years.

### FINDINGS OF FACT.

The taxpayer is an Illinois corporation with its principal office at Chicago, and was incorporated in the year 1903. Prior to that time it was operated as a partnership.

Prior to January 1, 1908, the taxpayer kept a single-entry system of books, but it kept no separate machinery or expense accounts. On or about January 1, 1908, the taxpayer opened a double-entry system of books. At that time the officers of the taxpayer made an appraisal of the machinery and other assets, based on the information contained in the old books and the condition of the assets as they existed at that time. For machinery they arrived at a value of $10,979.70, which was entered upon the books as the value of the machinery and equipment as of January 1, 1908. In the fall of 1908, upon solicitation of one Davis, who represented himself to be an experienced factory appraiser for insurance purposes, the taxpayer employed him to appraise its assets. This appraiser appraised the machinery and equipment at $15,341.05, or $4,361.35 in excess of the amount carried upon the books of the taxpayer at that time. On January 1, 1909, the taxpayer wrote up the amount of $4,361.35 as an additional investment in equipment and has carried it upon its books ever since.

As a basis of depreciation, the Commissioner accepted the taxpayer's original valuation as carried upon its books January 1, 1908, namely, $10,979.70. The taxpayer used as a basis this same amount plus the $4,361.35 above referred to. There is no controversy over a 10 per cent rate of depreciation. The taxpayer and the Commissioner are also in accord as to the additions to the machinery account in arriving at the March 1, 1913, value, the only difference being the said $4,361.35. The depreciation disallowed by the Commissioner for 1919 and 1920 is only that resulting from the said additional amount written upon the taxpayer's books January 1, 1909, based upon the said insurance appraisal and carried upon the books of the taxpayer through the taxable years in question.

The Commissioner increased the gross income of the taxpayer for 1920 in the amount of $243, representing the amount of donations the taxpayer is alleged to have taken as deductions. The income-tax return of the taxpayer shows that it reported $227.85 as "unallowable deductions," and did not deduct the same from income before computing the tax.

The principal stockholders and dominating directors in the management of the affairs of the taxpayer were H. A. Crofts and M. L. Twomley. Crofts had been president and treasurer of the corporation since its incorporation. Twomley acquired an interest in 1919 and acted as vice president and manager. These two stockholders, together with H. C. Crofts, a son of H. A. Crofts, and some employees who held qualifying shares, composed the board of directors. The board of directors held formal meetings but once a year, usually the latter part of January or the first part of February, at which time they adopted the recommendations of the said president and vice president.

In prior years the president and vice president had drawn $230 per week as salary, but in 1921, owing to poor business conditions, this was reduced. On January 31, 1921, the board of directors passed a resolution fixing the salaries of the Crofts and Twomley at $200 per week for the year 1921. On or about April 1, 1921, Twomley, while acting as president during the absence of Crofts, further reduced the drawing account of the two said officers to $150 per week. Upon the return of Crofts several months later, he protested and the salaries were restored to $200 per week. There was also some understanding that there would be a further increase to $230 per week, but the salaries were not credited on the books in excess of $200 per week until after the directors' meeting of February 7, 1922, as hereinafter referred to. On February 7, 1922, before the closing of the books of the taxpayer for 1921, the following resolution was adopted by the board of directors:

On motion duly made and seconded and carried, the compensation of the president and treasurer, H. A. Crofts, for the year 1921, and the compensation of vice-president and general manager, M. L. Twomley for the year 1921 was increased $30 a week, and the same was ordered to be paid them as of December 31, 1921, on account of the inadequacy of the compensation fixed at the beginning of 1921.

The increase of $30 per week was entered upon the books as of December 31, 1921, but the actual entry and payment of the increase were subsequent to the said meeting of February 7, 1922. It is this increase of salary, amounting to $3,120, which the Commissioner has disallowed and which is in controversy.

### OPINION.

LOVE: In respect to the controversy over depreciation, there is no dispute between the Commissioner and the taxpayer as to the rate of depreciation or additions to the machinery account since January 1, 1909. The sole issue relates to the value to be used as the basis

of depreciation. On January 1, 1909, the taxpayer increased its machinery account by $4,361.35, based on additional values attributed to the machinery by an insurance appraiser employed by the taxpayer. The Commissioner refused to recognize and accept this increase, and used as a basis the former valuation as carried upon the taxpayer's books January 1, 1908. This amount is the only difference entering into the Commissioner's and the taxpayer's March 1, 1913, values and the amounts of depreciation in 1919 and 1920.

It appears that the taxpayer, on January 1, 1908, for the first time opened a double-entry system of books in which it kept a separate machinery account and expense account. The machinery valuations were based upon appraisals by the officers of the taxpayer derived from a personal knowledge of the condition of the equipment and the information contained in its old single-entry system of books. This valuation was carried upon the books until January 1, 1909.

In the fall of 1908 an insurance appraiser persuaded the taxpayer that it was entitled to more insurance and that he was qualified to reappraise the property. He was employed and as a result of his appraisal the taxpayer, on January 1, 1909, carried the increased appraised value upon its books. The appraiser was not present at the hearing for examination nor were any of the factors used by him in arriving at his valuations presented in evidence. The officers of the taxpayer knew nothing of his qualifications as an appraiser, either before or after his appraisal, except that he had letters of recommendation when he applied for employment. Under the circumstances, we are of the opinion that the Commissioner was justified in refusing to accept the increased valuations and correctly used the taxpayer's valuations of January 1, 1908.

In relation to the disallowance of additional salaries to officers, the taxpayer contends that, since it was a close corporation, the informal discussions and agreements of the two dominant stockholders and directors during the year 1921, in relation to salary increases, should be given the effect of corporate acts under the principles adopted by the Board in *Appeal of Reub Isaacs & Co.*, 1 B. T. A. 45. From the evidence in the instant appeal it appears that, whatever discretion the directors gave the two officers as to corporate management, it was the practice and custom to fix the salaries by formal resolution of its directors. Thus, on January 31, 1921, the directors by resolution fixed the 1921 salaries of the two officers at $200 per week each. Formerly it had been $230 per week. For a short time the drawing account was reduced to $150 per week in 1921, but it

was restored to $200 so that at the end of the year each had drawn at the rate of $200 per week in accordance with the resolution of January 31, 1921. But the two officers evidently considered it necessary to get authority from the board of directors for a retroactive raise of $30 per week for 1921 and this was accordingly done February 7, 1922, by resolution of the directors. A close reading of the resolution does not indicate or suggest a mere ratification of former acts of the officers, but clearly indicates an original attempt to refix the 1921 salaries, which, under the decisions of this Board, were deductible only in the year in which the authority was given. *Appeal of Van De Kamps Holland Dutch Bakers*, 2 B. T. A. 1247.

As to the donations, the taxpayer's returns admitted in evidence indicate that the taxpayer reported donations as follows: 1919, $226.41; 1920, $227.85; 1921, $155.21; but it did not deduct them as expenses before the computation of the tax. The Commissioner added the amounts to income on the theory that they had been deducted by the taxpayer, but the evidence shows that the Commissioner was in error and the deficiency should be computed accordingly.

After the hearing and argument, the Commissioner for the first time made a motion that the invested capital of the taxpayer for each year be reduced to the extent of the full amount of the tax paid for the prior year, instead of prorating such tax from the time it became due and payable.

Since the submission of this appeal the Revenue Act of 1926 has been passed. Section 1207 of that Act precludes any action on the part of the Board other than to deny the motion of the Commissioner, and his motion is, therefore, denied.

The action of the Commissioner in disallowing certain depreciation claimed by taxpayer and in disallowing additional compensation to officers is approved.

The action of the Commissioner in adding certain donations to gross income is disapproved.

The motion of the Commissioner to decrease the amount of invested capital for each taxable year by the amount of income tax paid for the prior year is denied.

> *Order of redetermination will be entered on 15 days' notice, under Rule 50.*